A. D. McFARLANE v. STATE

No. 26,769. March 24, 1954.
Rehearing Denied June 2, 1954
Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) June 26, 1954.

*Davenport and Anderson*, by *Henry J. Anderson*, and *Wayne Somerville*, Wichita Falls, for appellant.

*Wesley Dice*, State's Attorney, Austin, for the state.

DAVIDSON, Judge.

This is a conviction for aggravated assault; the punishment, a fine of $500 and one month in jail.

The information alleges that the assault was committed upon Gay Bryan. The ground of aggravation was the use of a deadly weapon, to-wit, a pistol.

At the outset we are confronted with the contention that appellant has been arbitrarily deprived of his bills of exception.

Within the proper time, appellant presented to the trial court twenty-nine formal bills of exception, numbered from 2 to 30, inclusive. The trial court refused twenty-five of the bills of exception by marking them "Refused." The trial court also noted upon each of the refused bills that the appellant excepted to his refusal thereof. The date the bills of exception were refused was November 5, 1952, or one day before the expiration of the 90-day period authorized within which bills of exception might be filed.

We are constrained to consider the bills of exception, notwithstanding their refusal by the trial court. Cotton v. State, 113 Texas Cr. R. 188, 19 S.W. 2d 319; Hunt v. State, No. 26,836, (page 115, this volume).

The case of McFarlane (W. N.) v. State, No. 26,715, 159 Texas Cr. Rep. 658, 254 S.W. 2d 136, while not a companion case, grew out of the same general transaction.

Gay Bryan, the alleged injured party here, and his wife, Doris Bryan, were engaged in the cleaning and pressing business and in the operation of a parking lot. Appellant operated an adjoining tourist court and parking lot. His brother, W. N. McFarlane, worked for him. What is referred to as "an old city bus" was used and occupied as an office for the McFarlane parking lot.

Ill feeling existed between the Bryans and the McFarlanes over a dividing fence. The controversy had reached the point where an injunction had been sought by McFarlane.

This being the background, Mrs. Bryan saw appellant standing in front of their (Bryans') parking lot about nine o'clock the night of April 15, 1952. She testified that W. N. McFarlane "grabbed" her and dragged her "over to his office," and there started "stomping" her severely and beating her with his fists; and that while W. N. McFarlane was beating and "stomping" her, the appellant, A. D. McFarlane, came into the office and "held me while the other one hit me." Looking out the office window, appellant saw Gay Bryan approaching and was heard to say, "The son of a bitch is coming." He then grabbed a pistol, ran out of the office and attacked the husband by beating him over the head with the pistol. The witness further testified as to the extent of the injuries she received as a result of the attack of W. N. McFarlane, including a broken nose and a miscarriage.

The foregoing facts are taken from the testimony of the witness Mrs. Gay Bryan.

Gay Bryan, the injured party named in the information, testified that on the night of the assault he had been at a next door cleaning establishment loading clothes and then drove his truck into his parking lot about the time the assault upon his wife began. When he endeavored to ascertain the whereabouts of his wife, he was attacked by the appellant and struck three

times over the head with a pistol, as a result of which he was severely injured.

It is for this assault by the appellant that he stands here convicted.

By the testimony of the witness Chisum, Mrs. Bryan is shown to have been the aggressor in the entire matter, in that "She drove up in front of the office on the McFarlane property and she said to me 'Where is that God damn son of bitching man at? . . . I am talking about that son of bitching McFarlane.'" The witness further testified that, about that time, Mrs. Bryan saw W. N. McFarlane in his office and started "cussing him." Thereupon he telephoned the sheriff's department to report that "there was a woman out in the driveway cussing him out"; that after the telephone call, Mrs. Bryan attacked McFarlane and began the difficulty that resulted in her injuries.

Appellant, as a witness in his own behalf, testified that he was lying in bed in his apartment situated near the parking lot when he heard a lot of noise; that upon looking out the window he saw Mrs. Bryan seated in a car near the door to the office and heard her "cussing." He saw his brother, W. N. McFarlane, talking over the telephone, which was on the same line with the telephone in his room. He listened in and heard his brother talking to the sheriff's office and asking that some deputies be sent out there. He saw Mrs. Bryan leave the car and go into the office and saw the fighting begin. He then went to the office. Upon his arrival, the fight had stopped, according to his testimony. His brother asked him to call the sheriff's office again. On the way back to his apartment to place the call there, he passed Mrs. Bryan's car and removed the ignition keys from the switch in order that she might not drive it away. He then went to his apartment and placed the call. After completing it he picked up his pistol, returned to the office, and saw, for the first time, the husband, Gay Bryan, drive up and park his car and start toward the office. As he did so, appellant said to him, "Gay, don't come in here." To Bryan's question, "Where is Doris?," he was told, "She is in the office. the officers has been called and stay out of here until they get here." It was because of Bryan's attempt to get into the office, notwithstanding appellant's warning, that appellant struck him the first blow with the pistol. According to appellant, the second blow was struck only after Bryan had again endeavored to enter the office following his threat: "I am going to kill that son of a bitch if it is the last thing I ever do."

Appellant insisted that his attack on Gay Bryan was to prevent what he thought would be a killing of one or the other if he (Bryan) ever got into the office and that it was an endeavor on his part to prevent the difficulty from resulting in more serious trouble and was in defense of his brother.

Appellant denied that he participated in any manner in the difficulty between Mrs. Bryan and his brother.

It is apparent from the verdict that the jury rejected appellant's defense.

Bills of exception complain of the receipt in evidence of the testimony showing the assault upon Mrs. Bryan by W. N. McFarlane, especially the details not only of the assault but of the injuries received by Mrs. Bryan. Appellant insists that such testimony was not relevant here, and highly inflammatory to him. It is also insisted that if the testimony be held admissible by reason of the fact that he was alleged to have participated therein, then it was proof of another and extraneous offense not coming within any exception allowing such character of testimony.

It becomes unnecessary to determine appellant's contention, for we find that appellant, by introducing in evidence the testimony of Mrs. Gay Bryan given upon the trial of the case, placed before the jury the same facts to which he was here objecting. One cannot complain of testimony when he introduces testimony to the same effect. Soble v. State, 153 Texas Cr. R. 629, 218 S.W. 2d 195.

It is apparent that, under the testimony of Mrs. Bryan, the state was justified in treating the testimony showing the assault upon her and that upon her husband as one general transaction; that the two assaults were so related as to be inseparable; and that for such reason the state introduced the testimony showing the assault upon Mrs. Bryan, in the first instance, as a part of the assault upon her husband.

As shown by various bills of exception, and especially in argument of state's counsel, appellant was taken to task for not calling as a witness in his behalf his brother, W. N. McFarlane.

Appellant's position is that his brother was under indictment for the same offense, or for an offense growing out of the

same transaction as that for which appellant was on trial, and, therefore, that he could not have testified in his behalf.

There is no question but that if appellant is correct in his contention, reversible error is here reflected.

Art. 82 of the Penal Code and Art. 711 of the Code of Criminal Procedure are almost identical and provide that persons charged as principals, accomplices, or accessories cannot be introduced as witnesses for one another.

Art. 651, C. C. P., known as the severance statute, provides the method whereby two defendants prosecuted for an offense growing out of the same transaction may obtain, by severance, the testimony of the other.

It will be noted that neither Art. 82, V. A. P. C., nor Art. 711, C. C. P., refer to charges "growing out of the same transaction." Such language is found only in the severance statute (Art. 651, C. C. P.).

Here, W. N. McFarlane was under accusation for the offense of aggravated assault upon Mrs. Gay Bryan, growing out of the same transaction. The two offenses—that is, the assault upon Mrs. Bryan and that upon her husband—were not the same, but they did grow out of the same transaction, according to the state's theory.

Under such circumstances, could appellant have called W. N. McFarlane as a witness in his behalf?

We are of the opinion that the case of Cotton v. State, 92 Texas Cr. R. 594, 244 S.W. 1027, where the distinction between "same offense" and "same transaction" within the meaning of the above statutes is pointed out, is here controlling.

It was there said:

"It is the *charge* lodged against them by the state, and not the acting together which works the disqualification."

In connection therewith, it was also pointed out that:

"If A. and B. act together in committing a crime, and A. only is charged therewith, B.'s evidence is available to him."

It is apparent, therefore, that W. N. McFarlane, not being charged with the offense for which appellant was upon trial, could have been called as a witness by the appellant. Such being true, it was within the province of the state to refer in argument to the jury to the fact that appellant had failed to call the witness.

We are constrained to conclude that the picture of the injured party, taken after the assault, was admissible upon the issue as to whether the pistol, as used in inflicting the injuries, was a deadly weapon.

Pictures of the injured party are admissible when they tend to establish some issue in the case. Ray v. State, No. 26,682, 266 S.W. 2d 124, (page 12, this volume).

The other questions presented by appellant in his brief are overruled without discussion.

No reversible error appearing, the judgment is affirmed.

Opinion approved by the court.

### ON MOTION FOR REHEARING

BELCHER, Judge.

Appellant, in his motion for rehearing, complains of the refusal of the court to permit him to interrogate Mrs. Bryan on cross-examination about her previous trouble with the McFarlanes over property boundary lines and an injunction suit pertaining thereto in order to show the motive and prejudice of the witness.

The record reveals that the defense offered the following testimony of Mrs. Bryan: "We had been having trouble about the title to our property, about the fences around it and about the signs for a long time. We didn't owe him (McFarlane) money, he bought a note, a delinquent note. He bought the note hoping to foreclose, he wouldn't accept the money."

She further said that she had testified at a hearing about the fence on this property, but had not been cited for violating an injunction concerning it. Her testimony further shows that she had appeared at other previous trials in which the Bryans and the McFarlanes were involved.

The above evidence reveals the previous relationship between the parties as to the matters herein complained of, thus no error is here shown.

We have considered the other contentions of appellant and are of the opinion that they do not show error.

Appellant's motion for rehearing is overruled.

Opinion approved by the court.